UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

HERBERT JOHN LAKE JR.,           Case Number: 10-10957
       Plaintiff,

                                               HON.  DAVID M. LAWSON
v.                                          UNITED STATES DISTRICT JUDGE

COMMISSIONER OF SOCIAL        HON. VIRGINIA M. MORGAN
SECURITY,                                 UNITED STATES MAGISTRATE JUDGE
       Defendants.

_____ /

**REPORT AND RECOMMENDATION**

**I.  Introduction**

       This is an action for judicial review of defendant's decision denying plaintiff's application for social security disability benefits.  Plaintiff, a resident of Flint, MI, alleged that he became disabled June 1, 2001 due to sarcoidosis and blurred vision.  Plaintiff had a hearing before an ALJ (via video conference with the ALJ in Phoenix, AZ) and then a supplemental hearing (again via video).  After considering the medical evidence, plaintiff's testimony, and that of the vocational expert, the defendant found that plaintiff was not disabled because although unable to perform his past relevant work,  he could perform a limited range of light work which provided a sit/stand option with environmental restrictions, and such work existed in significant numbers.  Plaintiff contends that this decision is not supported by substantial evidence, primarily because the ALJ did not give proper weight to the opinion of the treating physician.  For the reasons discussed in this report, it is recommended that thedefendant's motion for summary judgment be granted, that of plaintiff denied, and the decision denying

1

benefits be affirmed.

## II. Standard of Review

A person is "disabled" within the meaning of the Social Security Act "if he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). Further,

> an individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A). The claimant bears the burden of proving that he is disabled. *Foster v. Halter*, 279 F.3d 348, 353 (6th Cir. 2001).

A five-step process is used to evaluate DIB claims. 20 C.F.R. § 404.1520. In *Foster*, 279 F.3d at 354 (citations omitted), the Sixth Circuit discussed the process:

> The claimant must first show that she is not engaged in substantial gainful activity. Next the claimant must demonstrate that she has a "severe impairment." A finding of "disabled" will be made at the third step if the claimant can then demonstrate that her impairment meets the durational requirement and "meets or equals a listed impairment." If the impairment does not meet or equal a listed impairment, the fourth step requires the claimant to prove that she is incapable of performing work that she has done in the past. Finally, if the claimant's impairment is so severe as to preclude the performance of past work, then other factors, including age, education, past work experience, and residual functional

>capacity must be considered to determine if other work can be performed. The burden shifts to the Commissioner at this fifth step to establish the claimant's ability to do other work.

On judicial review, a court must determine whether the agency's decision is supported by substantial evidence. *Gillespie v. Commissioner*, 2010 WL 4063713, *3 (ED MI) (Lawson, J.)(collecting cases). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion, *Richardson v. Perales*, 402 U.S. 389, 401 (1971), see also *Lashley v. Sec'y of HHS*, 708 F.2d 1048, 1053 (6th Cir. 1983). If so, the agency's decision is to be affirmed.

If the decision is not supported by substantial evidence, then Sentence Four of 42 U.S.C. § 405(g) provides that a district court has the power "to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Secretary [now Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). A sentence four remand provides the required relief in cases where there is insufficient evidence on the record to support the Commissioner's conclusions and further fact-finding is necessary. *See, Faucher v. Secretary of Health and Human Servs.,* 17 F.3d 171, 174 (6th Cir. 1994) (citation omitted). In a sentence four remand, the court makes a final judgment on the Commissioner's decision and "may order the Secretary to consider evidence on remand to remedy a defect in the original proceedings, a defect which caused the Secretary's misapplication of the regulations in the first place." *Faucher*, 17 F.3d at 175. Also under Sentence Four, an agency's decision may be reversed and benefits immediately awarded if the record adequately establishes a plaintiff's entitlement to benefits. *Newkirk v. Shalala*, 25 F.3d 316, 317 (6th Cir. 1994). Where an adequate record exists, the decision

denying benefits can be reversed and benefits immediately awarded if the decision is clearly erroneous, proof of disability is overwhelming, or proof of disability is strong and evidence to the contrary is lacking. *See Faucher*, 17 F.3d at 176. Where remand would be an idle and useless exercise, courts are not required to convert judicial review of agency action into a ping-pong game. *Wilson v. Commissioner*, 378 F3d 541, 547 (6th Cir 2004) (citing *NLRB v. Wyman-Gordon*, 394 U.S. 759, 766 n.6(1969)(plurality opinion)).

### III. Background

In the application process, plaintiff alleged via teleclaim that he had sarcoidosis. He had swelling in his hands and feet and could not walk upstairs without getting dizzy. He had headaches and swollen joints, got winded after grocery shopping or walking. He quit work May 29, 2001 due to his feet turning black and his inability to walk. (Tr. 90) He was a hard iron processor in the automotive industry carrying up to 50 pounds and frequently 25 pounds. (Tr. 91-2) It appears that plaintiff previously applied for benefits and was unsuccessful. Consequently, he amended his onset date to April 14, 2004, the day after the agency denial. (Tr. 99)

The ALJ reviewed the evidence and found that plaintiff was insured for disability benefits through June 30, 2007. Plaintiff amended his alleged disability onset date to April 14, 2004. (Tr. 18) He has a high school education. (Tr. 22) The ALJ found that plaintiff had the severe impairments of sarcoidosis and mild obstructive lung defect. (Tr. 18) At the time of the ALJ decision, plaintiff was three days short of age 46. The ALJ found that plaintiff had past relevant work as a display rack assembler, plumber's helper, foundry worker, muffler assembler, and auto parts assembler. Plaintiff was unable to perform his past

relevant work. However, he was found able to perform a restricted range of light work. He was restricted from performing work around hazards, chemicals, dust and fumes. (Tr. 19)

**IV. Evidence**

At the hearing, plaintiff testified that he worked as a hard iron processor and in the muffler business. (Tr. 336) The vocational expert identified his past work as medium and skilled. (Tr. 338) Plaintiff has leg swelling every day and frequent hand swelling. He elevates his feet. The CPAP machine gets caught in his facial hair so he rarely uses it. (Tr. 343) His feet often feel like pins and needles are sticking in them. His walking capability varies and some days he can walk a couple hours. (Tr. 346) He has adverse medication effects from weather changes. (Tr. 347-48) The doctor has limited him to only one hour of driving at a time. (Tr. 354) Plaintiff noted that Dr. Benton is his lung specialist and the ALJ noted that Dr. Benton's records had yet to be submitted. (Tr. 355) A supplemental hearing was set.

At the supplemental hearing in August, plaintiff testified that the weather affected his feet swelling. In an eight hour day, he can stand for only fifteen minutes and then if he stands still, he will fall over. (Tr. 365) He estimates that out of an eight hour work day, he could stand for a total of three hours. (Tr. 366) The vocational expert testified that if plaintiff could stand for one hour at a time, a total of three hours in the day, no frequent stair climbing, no hazards, no exposure to chemicals, dust, fumes, toxic agents due to the sarcoidosis, then plaintiff would not be able to perform his past relevant work but could perform a range of light work. This would include unskilled light assembler in a clean warehouse, not a manufacturing environment. There are 9000 jobs regionally. Further, he could perform jobs

such as inspector (4700 jobs). At the sedentary level, there would be 6500 assembler jobs and 1400 order clerk jobs. (Tr. 367-368) If he required a sit/stand option and had intermittent difficulty with his hands, then the positions may be eliminated. They all require frequent fingering and handling. (Tr. 368-369) However, all the first group of jobs would be available if all he needed were a sit/stand option. (Tr. 370)  He would need to be absent not more than one day per month. (Tr. 371)

Plaintiff reported his daily activities in March, 2005. (Tr. 100-110) He states that his wife and kids do everything for him. He can walk only 5 minutes and then must stop and rest for 5 to 10 minutes. (Tr. 108) He can't go anywhere. Id. He wears glasses and has for about seven years. (Tr. 109) Similar results were reported by his wife in November, 2005. (Tr. 132)

A state agency review of the medical evidence indicated that plaintiff has intermittent claudication and intermittent edema, perhaps related to his medication. He could perform work that limited him to occasionally lifting or carrying 20 pounds, and frequently ten pounds. He could stand/walk 6 hours and sit 6 hours with need to avoid even moderate exposure to fumes, odors, dusts and gases. (Tr. 241-248, Tr. 254-260)

Plaintiff has both sarcoidosis and mild obstructive lung disease, with sleep apnea. He treats primarily at the University of Michigan (Tr. 159-188) and Michigan Lung (Tr. 202-226). He has been taking Plaquenil for several years and also takes other medications. The court will focus on evidence after April 14, 2004, the amended onset date as the evidence prior thereto has been previously reviewed and found not to support plaintiff's claim for disability. However, by way of background, some medical evidence will be discussed.

Plaintiff treats for his eye problems with Dr. Herzog. In February, 2002, plaintiff was

seen by Dr. Christopher Herzog for eye problems–blurred vision in the left.  Plaintiff  also had tunnel vision and headache.  (Tr. 155) The exam showed that there were no ocular effects from steroids or Sarcoid.  Id.  In December, 2005 he was seen complaining of irritation in his left eye and studies were conducted for Plaquenil macular toxicity.  No evidence of that was found. (Tr. 313)

In May, 2004, plaintiff reported to Dr. Headrick, D. O. Of Michigan Lung excessive daytime sleepiness, and some breathing difficulty.  (Tr. 198) Subsequently, Dr. Headrick reported that plaintiff needs to wear the CPAP machine, and he should be followed for pulmonary hypertension due to increased peripheral edema.  (Tr. 200-201) Also in May it was noted that plaintiff had increased facial edema.   He had normal pulses in the lower extremities and some pitting edema.   The Plaquenil was continued. (Tr. 226)   X-rays in November, 2004 showed no active pulmonary disease.  (Tr. 229) In June, 2005, pulmonary function tests showed 76% of the predicted value.  (Tr. 230)

In a letter dated December 6, 2004, Dr. Jeffrey Horowitz reports that plaintiff has been diagnosed with granulomatous lung disease, thought to be either sarcoidosis or pneumoconiosis due to an occupational exposure. (Tr. 303)  He has been taking Plaquenil 200 mg twice a day since 2002 and initially had significant improvement.  However, currently he has not had significant relief.  His use of the CPAP machine has not been successful.  He has significant problems but is stable.  He can walk one quarter mile without stopping, climb one flight of stairs but must rest at the top, and has obstructive sleep apnea. (Tr. 303)   His pulmonary function tests performed on the day of the report show that plaintiff has an FVC of 3.26 L, 61% of predicted; FEV1 of 2.68, 67% of predicted with FEV1 to FVC ratio of 110%.

7

This was consistent with his previously diagnosed restrictive defect. Dr. Horowitz recommended that plaintiff undergo a high resolution chest CT scan to evaluate for fibrosis, to continue to evaluate his sleep apnea, and have twice yearly eye exams.

In May, 2005, plaintiff underwent studies at Michigan Lung were his ejection fraction was normal but he reported recurrent claudication in the lower extremities. The pulmonary studies were consistent with mild restrictive lung disease. (Tr. 311)

In a letter dated May 23, 2005 to Dr. Benton and Dr. Flaherty, Dr. William Clemmons of the University of Michigan Department of Neurology reports that plaitnff has a history of loud snoring, granulomatous lung disease, witnessed apneas, gaspoing arousals, and mild to moderate excessive daytime somnolence with passive activities. (Tr. 296) He had a sleep study which showed an index of 7.1 and minimal oxygen saturation of 78%. He was intolerant to CPAP. He was instead given an oral appliance. His repeat study showed 3.1 and oxygen at 87%. Plaintiff has not had success in losing weight and at the time of exam in May 2005, weighed 226 pounds. (Tr. 296) His gait was witin normal limits and he was neurologically intact. (Tr. 296)

In January, 2007, Dr. Rittinger reports that plaintiff was in the office seeking reevaluation for sleep apnea and dyspnea. He notes that plaintiff had a stress test at Regional Cardiology which was normal with an EF (ejection fraction) of 52%. (Tr. 324) Plaintiff reports dyspnea when he is hunting and climbing stairs. He has some palpitations and swelling of feet. Excessive daytime somnolence is described as occurring in a persistent pattern. His wife is restless and he can't sleep. (Tr. 324) In December, 2006, it was noted that he refused to wear his CPAP. (Tr. 329 Claudication have been occurring for five years

8

recurrently.  In January, 2007, he was reported to be doing better but also having claudication and a Doppler study was recommended.  (Tr. 326)

With respect to Dr. Benton, plaintiff treated with Dr. Benton from December 2002 through October, 2004, from June through December, 2005, and August 2006 through January 17, 2008.  (Tr. 315-319) The handwritten progress notes are in the file.   In January, 2008, Dr. Benton (?–spelling is illegible) reports that plaintiff can lift less than ten pounds, stand walk less than two hours, and sit for 6 hours.  These limitations have existed since 2001 and out of a month of 160 hours of working, all 160 hours would be disrupted by his limitations. (Tr. 314)

## IV.  Discussion

Because plaintiff was disabled from performing his past relevant work, the burden shifted to the Commissioner to show that there was other work existing in significant numbers that plaintiff could perform.  The ALJ found that plaintiff had "the residual functional capacity to lift 20 pounds occasionally and ten pounds frequently.  He required a sit/stand option and work environments that did not expose him to temperature extremes.  Claimant is also precluded from performing work [sic] no work around hazards, chemicals, dust, and fumes." (Tr. 19)   The ALJ did not credit the need to lie down with feet elevated outside regularly scheduled breaks.  Id.  The ALJ reviewed the medical evidence and testimony of the vocational expert, and found that plaintiff was not able to perform the full range of light work, but could perform bench assembly work in a clean warehouse (9000 existing jobs), inspector in the same environment (4700 jobs regionally), and 6500 sedentary assembly positions, 2000 sedentary information clerk positions, and 1000 receptionist/clerk positions. (Tr. 23)

Plaintiff's primary challenge is that the ALJ failed to give proper weight to the opinion of the treating physician Dr. Benton and consequently failed to accommodate all of plaintiff's limitations in the hypothetical (#3) directed to the vocational expert. Plaintiff argues that the treating physician's testimony was not given the appropriate weight. Great deference is to be given to medical opinions and diagnoses of treating physicians. *Harris v. Heckler*, 756 F.2d 431 (6th Cir. 1985). Complete deference is given when said opinions are uncontradicted. However, in both instances, the opinion of the treating physician must be based on sufficient medical data. *Garner v. Heckler*, 745 F.2d 383, 391 (6th Cir. 1984); *Houston v. Secretary of HHS*, 736 F.2d 365, 367 (6th Cir. 1984). Where the doctor's physical capacity evaluation contains no substantiating medical opinions and is inconsistent with the doctor's previous opinions, the defendant is not required to credit such opinions. *Villarreal v. HHS*, 818 F.2d 461, 463 (6th Cir. 1987). The determination of disability is ultimately the prerogative of the Commissioner, not the treating physician. *Warner v. Commissioner of Social Security*, 375 F.3d 387 (2004) (citing *Harris v. Heckler*, 756 F.2d at 435).

In this case, Dr. Benton's opinion is not entitled to substantial weight. There is no correlating medical evidence to support his opinion of January, 2008. There are no personal observations, clinical findings, or objective evidence to support the opinion. Further, Dr. Benton's opinion was not consistent with other medical evidence in the record. Dr. Horowitz, Dr. Clemmons, and their colleagues at the University of Michigan found that plaintiff was able to walk one quarter mile without stopping, he was neurologically intact, and his gait was within normal limits. (Tr. 296, 303) His lungs were clear, without wheezing, and excursion was normal. (Tr. 304) The state agency reviewer Dr. Shaikh imposed limitations but they

were consistent with the limitations imposed by the ALJ.  Actually, the ALJ imposed more restrictions on plaintiff in limiting him to a sit/stand option and environmental limitations as well.

Plaintiff's argument that the third hypothetical to the vocational expert failed to include all of his impairments is not persuasive.  Considering the medical evidence, the objective findings, and plaintiff's history, the hypothetical adequately incorporated the evidence of plaintiff's functional limitations.  There was no objective evidence of hand swelling and the problem is noted on only one occasion.  There has been continual review of side effects from the Plaquenil and no significant side effects have been found.  The ALJ credited plaintiff with infrequent finger swelling as a limitation in propounding the hypothetical and there were still jobs that plaintiff could perform.

No remand is necessary for articulation of any consistency with the Dictionary of Occupational Titles.  Any error to so inquire was harmless and plaintiff has failed to point out any conflict with the VE testimony and the DOT.  Because no challenge was made to the VE testimony at the hearing, the ALJ was entitled to rely on it.  See, *Donahue v. Barnhart*, 279 F3d 441, 446-7 (7th Cir. 2002).

Accordingly, it is recommended that the defendant's motion for summary judgment be granted, that of the plaintiff denied, and the decision denying disability benefits be affirmed.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474

U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505, 508 (6th Cir. 1991). The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

           S/Virginia M. Morgan
           Virginia M. Morgan
           United States Magistrate Judge

Dated: January 3, 2011

**PROOF OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record via the Court's ECF System and/or U. S. Mail on January 3, 2011.

           s/Jane Johnson
           Case Manager to
           Magistrate Judge Virginia M. Morgan